IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

SENTRY SELECT INSURANCE COMPANY                                      PLAINTIFF

v.                                          Case No. 6:25-cv-6002

CLASSIC MOTORS OF TEXARKANA, INC.                                   DEFENDANT


CLASSIC MOTORS OF TEXARKANA, INC.                    THIRD-PARTY PLAINTIFF/
                                                       COUNTER-DEFENDANT

v.

JANSKE LAW FIRM and T. CLAY JANSKE        THIRD-PARTY DEFENDANTS/
                                            COUNTER-PLAINTIFFS


**MEMORANDUM OF DECISION**

On February 23, 2026, the Court presided over a bench trial in this case.  The trial involved two claims:  (1) Classic Motors of Texarkana, Inc.'s ("Classic Motors") request for a declaratory judgment that its obligations under a Fee Agreement between it and the Janske Law Firm have been satisfied; and (2) the Janske Law Firm and T. Clay Janske's claim that Classic Motors breached the Fee Agreement.  After hearing testimony and receiving evidence, the Court took the matter under advisement.  The parties have each submitted proposed findings of fact and conclusions of law by email.  The Court has reviewed the parties' post-trial submissions and the entire record.  Pursuant to Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact and conclusions of law.

**I. FINDINGS OF FACT**

In June 2023, Classic Motors reported hail damage to four buildings which were insured by Sentry Select Insurance Company ("Sentry").  A dispute arose between Sentry and Classic

Motors over the amount of hail damage each building sustained.  Sentry then invoked the appraisal process, or "umpire" process, found in the applicable Sentry insurance policy.  ECF No. 4-1, p. 291.

Because Classic Motors was not satisfied with the amount of Sentry's offer of $479,727.13 as full payment of the adjusted value of the claim, Gregg Orr, the owner of Classic Motors, began discussions with Janske[1] to determine if a greater recovery could be made.  According to the testimony of Misti McLelland, Legal Director of Gregg Orr Companies, Orr retained Janske to represent Classic Motors because Sentry had invoked the appraisal process.  Janske testified that he met with Orr in person.  According to Janske, they discussed a modified contingency agreement, the appraisal process, which Orr referred to as a "mediation process," and the filing of a lawsuit.  After the in-person meeting, Classic Motors and Janske signed a Fee Agreement Between Janske Law Firm and Classic Motors of Texarkana, Inc. ("Fee Agreement").  ECF No. 22-1.  The Fee Agreement states in pertinent part:

> Janske Law Firm will receive a flat fee retainer in the amount of Twenty Five Thousand Dollars and No/100 Cents ($25,000.00) to represent Classic Motors of Texarkana, Inc.  If a settlement is reached and agreed upon then there will be no additional fee.
>
> In the event the claim goes to mediation the Janske Law Firm will receive 10% of the settlement above $479,727.13 minus the $25,000.00 flat fee retainer.
>
> If a lawsuit has to be filed, the Janske Law Firm will receive 15% of the settlement above $479,727.13 minus the $25,000.00 flat fee retainer if settlement is reached prior to trial.
>
> If this matter goes to trial, the Janske Law Firm will receive 20% of the settlement above $479,727.13 minus the $25,000.00 flat fee retainer.

---

[1] In this opinion, "Janske" refers to T. Clay Janske.  The Court notes that the claims of T. Clay Janske and the Janske Law Firm are the same.

ECF No. 22-1, p. 1.

On October 16, 2023, the Fee Agreement was executed, and a $25,000.00 "flat fee retainer" was transmitted to Janske along with the Sentry insurance policy, which Janske had not seen prior to or during the in-person meeting with Orr. After receiving the Sentry insurance policy, Janske determined that the more prudent method of challenging the amount of the claim at this stage was to submit an appraisal to an "umpire," as contemplated by the policy and invoked by Sentry. ECF No. 4-1, p. 291. The process allowed Sentry and Classic Motors each to select an impartial appraiser. ECF No. 4-1, p. 291. If the appraisers did not agree on the amount of loss, they would submit their differences to an umpire of their choice. ECF No. 4-1, p. 291. The policy stated that "[a] decision agreed to by any two will be binding." ECF No. 4-1, p. 291. Janske testified that he believed a lawsuit would be necessary in the end but thought it would be in Classic Motors's best interest to first participate in the appraisal process.

On October 20, 2023, four days after the execution of the Fee Agreement, Janske emailed McLelland stating that he wanted to "clarify one thing." Janske Exh. 5. He wished to clarify that the Fee Agreement used the term "Mediation," and he "based that on what Gregg [Orr] said was in the Sentry policy." Janske Exh. 5. Janske stated, "As I read the policy they use the term Umpire instead of mediator." Janske Exh. 5. McLelland acknowledged in her email response that the "[p]olicy does refer as an [sic] 'Umpire' instead if [sic] 'Mediator.'" Janske Exh. 5. The insurance policy at issue does not mention the term "mediation."

On December 5, 2023, Janske stated in an email to McLelland, "Once we get his opinion and Randy Green[2] submits his opinion then we have to go to a mediation/umpire if that isn't agreed upon, we file quickly after." Classic Motors Exh. 5. Again, in a December 12, 2023 email to

---

[2]Janske engaged Randy Green to evaluate Classic Motors' insurance claim and act as an expert on its behalf in attempting to recover the maximum amount possible from Sentry.

McLelland, Janske states that "Randy is reaching out to the adjuster today to work on possible mediator/umpires to help speed the process up." Classic Motors Exh. 5. In another email that day, Janske explains to Orr that the Sentry insurance "policy requires the mediation first that's why we are trying to rush it." Classic Motors Exh. 6.

Orr occasionally would demand that Janske file a lawsuit against Sentry, but Janske believed that, per the insurance policy, Classic Motors and Sentry must first participate in the appraisal/umpire process referenced in the insurance policy. Janske testified that he believed he could not avoid the appraisal/umpire process and that filing a lawsuit would have triggered a meritorious motion to stay or dismiss because the umpire process had not yet been completed. In fact, Sentry's attorney had threatened to file such a motion if Classic Motors initiated a lawsuit. Janske also testified that had he filed a lawsuit against Sentry, it would trigger a higher fee percentage as outlined by the Fee Agreement. Janske did not believe that filing a lawsuit was in the best interest of Classic Motors.

Both Sentry and Classic Motors participated in the appraisal/umpire process, which took almost one year to complete. On December 6, 2024, an Appraisal Award was handed down, which was signed by Randy Green (the appraiser for Classic Motors), the appraiser for Sentry, and the Umpire of Record. Janske Exh. 9. The award amount was $3,325,670.83, which was then reduced for depreciation, deductible, and cosmetics. The adjusted total award amount was $1,760,030.83. It appears that Janske became aware of the Appraisal Award on December 10, 2024, as evidenced by an email sent to Sentry on that same day. Janske Exh. 9. On December 18, 2024, Classic Motors authored a letter terminating Janske. Janske Exh. 11.

On December 26, 2024, Janske sent an email to Sentry requesting that Sentry add Janske's name to "any checks sent to Orr." Janske Exh. 13. Janske further stated, "I am asserting an

4

Attorneys Lien in the amount of $134,006.80.  The contract I have with Orr calls for 10% Attorney fee minus the original $479,727.12 that Sentry had offered before I was contracted minus a $25,000.00 initial retainer."  Janske Exh. 13.

On January 8, 2025, Sentry filed in this Court a Complaint for Declaratory Judgment against Classic Motors, asking the Court for a "judgment declaring that $1,760,030.83 is the total amount owed under Policy No. 244676201 for the actual cash value of the damage sustained to the four buildings."[3]    ECF No. 4, p. 5.   Classic Motors filed a Third-Party Complaint for Declaratory Judgment against Janske, asking the Court for a judgment declaring that "Classic's obligations under  . . . the Fee Agreement are satisfied" and that "neither Janske Law Firm nor T. Clay Janske are entitled to any claim or interest in or to any portion of the remaining Policy proceeds being held by Sentry."  ECF No. 14, p. 6.  Janske filed a Counterclaim alleging that Classic Motors had breached the Fee Agreement by refusing to pay his percentage of the Appraisal Award, which Janske calculated to be $134,006.80.

On January 28, 2025, Sentry issued payment of $1,626,024.03 to Classic Motors as partial payment of the undisputed amount owed on the Classic Motors' insurance claims, which are the subject of the Complaint for Declaratory Judgment.  ECF No. 4.  Sentry, per an agreement with Classic Motors, withheld $134,006.80 because of the disagreement between Classic Motors and Janske over the amount of attorney's fees owed to Janske.

The Court allowed Sentry to deposit $134,006.80 into the registry of the Court, which is the portion of the insurance proceeds owed to Classic Motors in which Janske is claiming an interest.  ECF Nos. 30, 31.  The issue before the Court is whether Janske or Classic Motors is entitled to the disputed funds.

---

[3]The parties have reached an agreement that $1,760.030.83 is the total cash value owed under the Sentry insurance policy at issue.

## II. CONCLUSIONS OF LAW

To prove a breach-of-contract claim, the plaintiff must show:  "(1) the existence of a contract[;] (2) and obligation on the part of the defendant under the contract[;] (3) a failure to perform the obligation[;] and (4) resulting damages."  *Murphy v. Hansen*, 2025 Ark. App. 549, at 23, 726 S.W.3d 629, 643 (2025) (citing *Barrows/Thompson, LLC v. HB Ven II, LP*, 2020 Ark. App. 208, at 15, 599 S.W.3d 637, 647 (2020)).  The parties agree that the Fee Agreement is a contract. The overarching dispute in this case is whether Classic Motors failed to perform its payment obligation under the Fee Agreement.  To decide this issue, the Court must examine the language of the Fee Agreement.

"The first rule of interpreting a contract is to give the language employed the meaning that the parties intended, and the court must consider the sense and meanings of the words used by the parties as they are taken and understood in their plain, ordinary meaning."  *Fort Worth Partners, LLC v. Nilfisk, Inc.*, 155 F.4th 989, 998 (8th Cir. 2025) (quoting *S. Constr., LLC v. Horton*, 2020 Ark. App. 361, at 14-15, 609 S.W.3d 16, 26).  "[T]he intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement."  *S. Constr., LLC*, 2020 Ark. App. 361, at 15, 609 S.W.3d at 26 (citing *Alexander v. McEwen*, 367 Ark. 241, 244, 239 S.W.3d 519, 522 (2006)).  "Different clauses of the contract must be read together and the contract construed so that all its parts harmonize, if that is possible."  *Murphy*, 2025 Ark. App. 549, at 22, 726 S.W.3d at 643 (citing *Rausch Coleman Homes, LLC v. Brech*, 2009 Ark. App. 225, at 5, 303 S.W.3d 456, 458).

Under Arkansas law, a court must initially decide whether a contract is ambiguous.  *S. Constr., LLC*, 2020 Ark. App. 361, at 14, 609 S.W.3d at 26.  When the language of the contract is unambiguous, a court must apply the plain language of the parties' terms and determine as a matter

6

of law how to apply the contract. *Murphy,* 2025 Ark. App. 549, at 23, 726 S.W.3d at 643 (citing *S. Constr., LLC*, 2020 Ark. App. 361, at 16, 609 S.W.3d 16 at 26). "A contractual provision is ambiguous when there is doubt or uncertainty as to its meaning so that it is open to at least two reasonable interpretations." *Id.* (citing *S. Constr.,* LLC, 2020 Ark. 361, at 14, 609 S.W.3d at 26). If the language is ambiguous, a court may "apply the contract as a matter of law if the ambiguity can be resolved by referring to the contract." *S. Constr., LLC*, 2020 Ark. App. 361, at 16, 609 S.W.3d at 26. "If the contract's terms cannot sweep away the initial uncertainty, then the court may look outside the contract." *Id.*, 609 S.W.3d at 26. (citing *Prochazka v. Bee-Three Dev. LLC*, 2015 Ark. App., at 5, 466 S.W.3d 448, 452 (2015)). "Considerable weight may be given to how the parties themselves understood a contract's terms, as shown by their subsequent statements, acts, and conduct." *Id.* (citing *Prochazka*, 2015 Ark. App. 384, at 5, 466 S.W.3d at 452).

Classic Motors contends that the term "mediation" in the Fee Agreement is unambiguous and should be given its plain meaning—a dispute resolution process in which a neutral third party assists disputing parties in reaching a mutually acceptable agreement. Classic Motors argues that a "mediation" between it and Sentry did not occur, and thus it does not owe Janske "10% of the settlement above $479,727.13 minus the $25,000.00 flat fee retainer." ECF No. 22-1. Janske contends that the term "mediation" in the Fee Agreement is ambiguous and based upon his mistaken belief that mediation was the method of dispute resolution contemplated by the Sentry insurance policy. Janske argues that the term "mediation" refers to the umpire process referenced in the Sentry insurance policy, and thus Janske is entitled to the 10% payment because the insurance claim was resolved through the umpire process.

The dictionary meaning of the term "mediation" is an "intervention between conflicting parties to promote reconciliation, settlement, or compromise," specifically, "a means of resolving

disputes outside of the judicial system by voluntary participation in negotiations structured by agreement of the parties and usually conducted under the guidance and supervision of a trained intermediary." *Mediation*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/ mediation. According to Black's Law Dictionary, the term "mediation" means "[a] method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution." *Mediation*, BLACK'S LAW DICTIONARY, (12th ed. 2024).

Because Sentry and Classic Motors disagreed on the amount of loss, they participated in the appraisal/umpire process as set forth in the insurance policy. Each party selected an appraiser, and the appraisers set forth separately the amount of loss. The appraisers then submitted their differences to an umpire, who was selected by the appraisers. The umpire and both appraisers comprise the appraisal panel, and a decision agreed to by any two members of the panel is binding. The appraisal panel issued an appraisal award in which all three panel members agreed. Janske Exh. 9. It appears that the appraisal award was accepted by both Sentry and Classic Motors.

The meaning of the term "mediation" as used in the Fee Agreement cannot be resolved by referring to the four corners of the agreement. Reading the provisions of the Fee Agreement as a whole, the Court reasons that the term "mediation" is generally referring to a pretrial alternate dispute resolution process, but the Fee Agreement does not define this exact process. The Court therefore concludes that reasonable minds could differ as to the interpretation of the term "mediation." The appraisal/umpire process in which both Sentry and Classic Motors participated involved a neutral third party who assisted the disputing parties in reaching a mutually acceptable agreement, which is in line with Classic Motors's "plain meaning" interpretation of the term "mediation." On the other hand, the umpire process could be described as an intervention between conflicting parties to promote settlement or compromise, as evidenced by the accepted appraisal

award, which is in line with Janske's interpretation of the term "mediation." Both Janske and Classic Motors have offered a reasonable interpretation of the term. Thus, the Court concludes that the term is ambiguous.

Because the contractual provision involving the term "mediation" is ambiguous, the Court is "allowed to look outside the [Fee Agreement] and apply the contract-interpretation principles described above, including weighing how the parties themselves understood a contract's terms, as shown by their subsequent statements, acts, and conduct . . . ." *Murphy*, 2025 Ark. App. 549, at 644, 726 S.W.3d at 629. Thus, the Court will consider Janske's testimony regarding the circumstances surrounding the formation and execution of the Fee Agreement, which the Court finds credible, and any subsequent statements and conduct by both Classic Motors and Janske.

Janske and Orr met in person to discuss Janske representing Classic Motors. Janske testified that they discussed a modified contingency agreement where Janske would receive a flat fee plus some contingency based on different steps of the pre- and post-litigation process. According to Janske, during this meeting, Orr explained that Sentry had invoked a mediation process described in the insurance policy. Janske testified that the term "mediation" in the Fee Agreement originated with Orr's reference to this "mediation" process, which the insurance policy referred to as an appraisal process involving an umpire. Both parties signed the Fee Agreement, and Janske was hired to represent Classic Motors on October 16, 2023. At some point after the meeting, Janske received a copy of the insurance contract at issue, which discussed the appraisal process as a means to settle disputes between the insurer and insured as to the amount of the claim. On October 20, 2023, Janske sent an email to McLelland stating that he wanted to "clarify one thing," which was that the Fee Agreement used the term "mediation" based on what Orr told Janske at the meeting but that the Sentry insurance policy used the term "Umpire" instead of "mediator."

9

Classic Motors, Exh. 6.  In a follow-up email, McLelland confirmed that the Sentry insurance policy used the term "Umpire" instead of "Mediator."  Classic Motors, Exh. 6.

Looking at the whole context and all provisions of the Fee Agreement, the intention is for Janske to be compensated by a contingency fee on a sliding scale depending on which stage of the legal process was reached.  First, there is a flat fee retainer.  Second, Janske will receive a 10% fee if the claim goes to "mediation."  Third, Janske will receive a 15% fee if a lawsuit is filed but a settlement is reached prior to trial.  Fourth, Janske will receive a 20% fee if the matter goes to trial.  ECF No. 22-1.  The Fee Agreement contemplates both a pre-lawsuit mediation process and a post-lawsuit settlement process.  Based on Janske's uncontroverted testimony, the pre-lawsuit mediation process is referring to the appraisal/umpire process that Janske and Orr discussed at their first meeting, which Orr described as a mediation process under the Sentry insurance policy.  Janske then clarified the term in his October 20, 2023 email to McLelland, stating that the term "mediation" in the Fee Agreement is referring to the appraisal/umpire process discussed in the policy.  This is congruent with the Fee Agreement's structured contingency fee, which accounts for both a pre-litigation "mediation" and a post-lawsuit "settlement," especially considering the fact that both Orr and Janske were aware that Sentry had invoked an alternate dispute resolution process described in the policy.  McLelland testified that it was Sentry's letter to Classic stating its intent to invoke the appraisal/umpire process that triggered Orr to retain Janske.

In another email from Janske to McLelland dated December 12, 2023, Janske reports that Green was reaching out to Sentry to work on possible "mediator/umpire to help speed the process up."  Classic Motors Exh. 5.  Orr responds by email stating that he wants to "file a lawsuit not do mediation!"  Classic Motors Exh. 5.   From this email exchange, it appears that both Janske and Orr understand that the "mediation" process and "umpire" process are the same.  Although Orr

may have disagreed with Janske's legal judgment as to whether Classic Motors should fully participate in the appraisal process before filing a lawsuit, this does not negate the fact that both Orr and Janske were aware that the appraisal/umpire process had already been invoked by Sentry when the Fee Agreement was drafted and executed. If Orr's intention in hiring Janske was only to file a lawsuit and not participate in any pre-litigation alternate dispute resolution process, then the mediation clause in the Fee Agreement would have been unnecessary.

Several email exchanges and texts between Orr and Janske show that Orr was unhappy with how long the appraisal process took, how much Green was paid for his services, and what he deemed as lack of communication and monthly billing by Janske. Janske Exhs. 13, 14, 15, 16. The relationship between Janske and Orr deteriorated and resulted in Orr terminating Janske after the appraisal process was complete. Then, Orr requested from Janske a refund of $10,000.00 of the $25,000.00 retainer fee. Janske Exhs. 13, 14. Ultimately, it appears that Orr was looking for a reason not to pay Janske his full fee given the issues Orr described in emails and texts. This is when Orr took the stance that Janske should not get his 10% fee because the parties never participated in "mediation." The evidence, however, does not support Orr's interpretation of the Fee Agreement—an interpretation that would conveniently allow him to pay Janske a lesser fee.

Considering Janske and Classic Motors' subsequent statements, acts, and conduct as well as the whole context of the Fee Agreement, the Court concludes that the parties intended for the term "mediation" in the Fee Agreement to refer to the appraisal/umpire process described in the Sentry insurance policy at issue. Accordingly, Classic Motors must pay the Janske Law Firm 10% of the Appraisal Award above $479,727.13 minus the $25,000.00 "flat fee retainer." ECF No. 22-1. Janske states that this amount is $134,006.80, and this is the amount that has been paid into the

registry of the Court.[4]  Because Classic Motors has not paid this amount to Janske, the Court finds that Classic Motors is in breach of the Fee Agreement.

### III. CONCLUSION

In accordance with the foregoing Findings of Fact and Conclusions of Law, the Court orders that judgment should be entered in favor of T. Clay Janske and the Janske Law Firm in the amount of $134,006.80 on its breach of contract claim.  This is the amount that is being held in the Court's registry, and the Court directs the Clerk of Court to release those funds to T. Clay Janske and the Janske Law Firm.  A judgment of even date shall issue.

**IT IS SO ORDERED**, this 28th day of July, 2026.

/s/ Susan O. Hickey
Susan O. Hickey
Senior United States District Judge

---

[4]Classic Motors has does not appear to dispute this amount and has offered no alternative calculation of the fee.

12